## Lyle's Estate.

*Wills—Construction—Interpolating clauses which have been inadvertently omitted by testator.*

1. In an endeavor to ascertain and carry out the real intention of the testator, words may be interpolated which have been omitted only where it is evident that the testator has not expressed himself as he intended, and it is also evident what particular words were omitted.

2. Testator bequeathed his residuary estate to trustees, in trust, *inter alia*, to pay the net income in certain proportions to legatees described in clauses C, D and E, "for and during" their "natural lives." By clause A he gave one-fourth of the income to M. L. T. for her life, and on her death to her surviving children until the youngest should attain the age of thirty-five, her children being F. L. T. and M. E. T. By clause B he gave the income of one-sixth of the residue to the said F. L. T. and M. E. T., not for their natural lives, but until they should attain the ages of thirty or thirty-five years, with provisions for the payment of portions of the principal to them as they should attain these ages. By clause G he provided that in case of the death, without leaving children or other descendants surviving, "of any person who, under this will, is entitled to receive any income during his or her entire life, the surviving life-tenants or life-tenant" should be paid the income which such deceased life-tenant was receiving at the time of his or her death, "said payment of said income to said surviving life-tenants or life-tenant to be for their respective lives, and to be made to them in the proportions hereinbefore stated in clauses A, C, D and E." By clause H he provided that upon the death of all said life-tenants the principal of the estate not otherwise disposed of should be divided among the persons and for the estates they would have been entitled to if the testator had survived the survivor of said life-tenants and died intestate, etc., with a provision that until the time of final distribution all income not otherwise disposed of by the will should be divided among the persons, etc., mentioned in clause G, concerning the income referred to in said clause. J. L. W., to whom one-sixth of the income had been given under clause C, died: *Held*, that B could not be interpolated between A and C in clause G so as to give F. L. T. and M. E. T. an interest in the income distributable under that clause by reason of the death of J. L. W.

Exceptions to adjudication. O. C. Phila. Co., Jan. T., 1916, No. 572.

It appears from the adjudication that the relevant facts necessary to an understanding of the opinion are as follows:

The trust arose under the will of Franklin L. Lyle, a well-known member of the Philadelphia Bar, who died Feb. 14, 1915, by the third paragraph of which he provided as follows:

"All the rest, residue and remainder of my estate, real and personal, of which I may die seized, possessed or entitled to I give, devise and bequeath to my Executors hereinafter named, In Trust, Nevertheless, to invest and reinvest the personal estate, to let and demise the real estate, to collect the dividends, income, interest, rents, issues and profits therefrom, and after paying taxes and other lawful charges incident to my estate, to hold my said residuary estate for the following uses and purposes, to wit:

"*A.* To pay one-fourth of the net annual income thereof to my sister Martha Lyle Tinker for and during her natural life, and upon her death to pay said income to her children who may survive her, until the youngest surviving child shall attain the age of thirty-five (35) years.

"*B.* To apply one-sixth part of said income to the education and maintenance of my nephew Franklin Lyle Tinker and my niece Martha Elizabeth Tinker until they shall have respectively attained the age of twenty-one years, and as each attains said age to pay said income to him or her. If either should die before reaching said age the survivor shall be entitled to the benefit of the entire income. If my said nephew shall live to attain the age of thirty years he shall be entitled to receive one-third of the principal from which the income referred to in this clause *B* was derived.

Lyle's Estate.

"If my said niece shall live to attain the age of thirty years she shall in like manner be entitled to receive one-third of the principal from which the income referred to in this clause *B* was derived.

"If either my said nephew or my said niece should die before reaching the age of thirty years the survivor shall be entitled to the entire income upon said one-sixth part of my residuary estate until he or she attains the age of thirty-five years.

"If my said nephew shall live to attain the age of thirty-five years he shall be paid whatever part of the said one-sixth part of my residuary estate as may at that time be still held in trust and undistributed under the directions in this clause *B*.

"If my said nephew shall die before reaching the age of thirty-five years, and my said niece shall then be deceased, then so much of the principal as would have been paid to him had he reached said age shall be and remain as part of my residuary estate and be disposed of at the period and according to the directions hereinafter mentioned in clause *H*, but if my said nephew shall die before reaching said age of thirty-five years and my said niece shall survive him she shall be entitled to the income upon the balance of principal then held in trust under this clause *B* until she attains the age of thirty-five years, at which time said balance of principal shall become subject to the dispositions provided in said clause *H* of my will.

"*C*. To pay one-sixth of said net income to my sister Jennie L. Webster and one other sixth part to my brother William H. Lyle for and during her and his natural life respectively.

"*D*. To pay one-sixth part of said net income to my sister Mary S. Boettger and her daughter Mary Hartley in equal shares for and during their natural lives and the life of the survivor.

"*E*. To pay the remaining one-twelfth part of said net income unto the said Martha Lyle Tinker, William H. Lyle and Jennie L. Webster in equal shares for and during their respective natural lives and the life or lives of the survivor or survivors.

"*F*. Upon the death of any of the following persons, to wit, Jennie L. Webster, Mary S. Boettger, William H. Lyle and Mary Hartley, leaving children or other descendants to survive him or her, I direct that the income which the one so dying had been receiving shall be paid to his or her surviving children or other descendants, *per stirpes*, until the time has arrived for the distribution of the principal of my estate as hereafter directed in clause *H*.

"*G*. Upon the death without leaving children or other descendants to survive him or her, of any person who under this will is entitled to receive any income during his or her entire life, I direct that the surviving life tenants or life tenant shall be paid the income which such deceased life tenant was receiving at the time of his or her death, said payment of said income to said surviving life tenants or life tenant to be for their respective lives and to be made to them in the proportions hereinbefore stated in clause *A*, *C*, *D* and *E*.

"*H*. Upon the death of all said life tenants I direct that the principal of my estate not otherwise disposed of shall be divided among the persons and for the estates they would have been entitled to if I had survived the survivor of said life tenants and died intestate, and until the time for final distribution of my estate, as herein directed, has arrived, I direct that all income arising upon any and all parts of my estate and not otherwise disposed of by this my will shall be divided among the persons in the proportions and for the periods hereinbefore mentioned in clause *G* concerning the income referred to in said clause."

4 D. & C.

Lyle's Estate.

By codicil the testator provided:

"I hereby change and modify clause *D* in said will so it will read:

"To pay one-sixth of said net income as follows: One-half thereof to my sister Mary S. Boettger during her natural life and remaining one-half to be divided between her daughter Mary Hartley and her son Franklin Boettger during their respective natural lives and the life of the survivor.

"I further direct that clause *F* in said will shall be modified by inserting the name of Franklin Boettger therein."

This account was filed by reason of the death of Jennie L. Webster, a life-tenant under clause *C* entitled to 14/72nds of the income.

It was contended on behalf of Franklin L. Tinker and Martha Elizabeth Tinker, minor children of Martha Lyle Tinker, that the omission of the recital of clause *B* between *A* and *C* in clause *G* had been a mistake; that the court could properly rectify the error; and that, therefore, these minors were entitled to share in the distribution under that clause. The auditing judge so held, to which ruling exceptions were taken.

*H. Edgar Barnes*, for exceptants; *R. M. Remick*, contra.

GEST, J., Dec. 7, 1923.—As the auditing judge has recited the will and all other necessary facts in his adjudication, we need not repeat them. The question raised by these exceptions concerns the present distribution of 14/72nds of the income of the residuary estate to which Jennie L. Webster was entitled during her life, 1/6th, or 12/72nds, under clause *C*, and 1/36th, or 2/72nds, under clause *E*. On her death, without leaving issue, the distribution of these shares of income is directed by clause *G*, which provides that on the death, without leaving surviving children or other descendants, of any persons entitled to receive any income during his or her entire life, the surviving life-tenants shall be paid the income which said deceased life-tenant was receiving at the time of his or her death, for their respective lives, the same to be divided among them in the proportions stated in clauses *A, C. D* and *E*. The auditing judge held that the recital of clause *B* had been omitted by mistake, that the persons designated as life-tenants included the minor nephew and niece of the testator, Franklin Tinker and Martha E. Tinker, for whom provision is made in said clause *B*, and, consequently, included them in the distribution, to which exceptions have been filed by certain life-tenants.

It cannot be denied that the court, in construing a will, may, in the endeavor to ascertain and carry out the real intention of the testator, interpolate words which he has omitted, but all the authorities hold that this can only be done in cases where (1) it is evident that the testator has not expressed himself as he intended, and (2) where it is also evident what particular words were omitted. See Redfield on Wills, Jarman on Wills and Williams on Executors, quoted in Hellerman's Appeal, 115 Pa. 120; and the decisions on the subject have applied the principle very cautiously, as appears from those cited in the same case, which hold that conjecture, though founded on the highest degree of probability, is not sufficient. As it was said in Hellerman's Appeal, the mistake, if there be a mistake, cannot be corrected unless it clearly appears by fair inference from the whole will. And in Bender *v.* Bender, 226 Pa. 607, the Supreme Court, in reversing the judgment of the lower court, said: "In construing a will, the rule requires that it be read in the ordinary and grammatical sense of the words employed, unless some obvious absurdity or some repugnance or inconsistency with the declared intention of the testator, as extracted from the whole will, should follow from so reading it." This principle was applied by this court in McConnell's Estate, 28 Dist. R. 647, affirmed

by the Supreme Court, on Judge Gummey's opinion, in 266 Pa. 294. See, also, Varner's Appeal, 87 Pa. 422; Thompson's Estate, 229 Pa. 542, and Nebinger's Estate, 6 Dist. R. 340, 185 Pa. 399.

The question, therefore, for us to determine is whether, from a consideration of the whole will, it clearly appears that the testator intended to insert in clause *G* a reference to clause *B* and inadvertently omitted to do so.

Now, the testator provided for the payment of the income of his residuary estate as follows:

In clause *A*, one-fourth to Martha Lyle Tinker for and during her natural life, and on her death to her surviving children until the youngest shall attain the age of thirty-five years, her children being Franklin Lyle Tinker and Martha Elizabeth Tinker; in clause *B*, one-sixth of the income to his nephew, Franklin Lyle Tinker, and his niece, Martha Elizabeth Tinker, not, however, "for and during their natural lives," but limited to their attaining the ages of thirty or thirty-five years, with somewhat complicated provisions for the payment to them of the principal or portions thereof, if they should attain those ages; in clause *C*, one-sixth of the income to Jennie L. Webster and one-sixth to William H. Lyle, for and during her or his natural life respectively; in clause *D*, one-sixth of the income to his sister, Mary S. Boettger, and her daughter, Mary Hartley, for and during their natural lives and the life of the survivor; in clause *E*, the remaining one-twelfth of the income to said Martha Lyle Tinker, William H. Lyle, Jennie L. Webster and (by codicil) Franklin L. Boettger, for and during their respective natural lives and the life or lives of the survivor or survivors. In clause *F*, the testator provided for the case of the death of any of Jennie L. Webster, Mary S. Boettger, William H. Lyle, Mary Hartley and (by codicil) Franklin L. Boettger, leaving children or other descendants, who should be paid the income of the one so dying until the time for distribution of the principal under clause *H*.

These persons, it will be noted, are all the persons who by clauses *C, D* and *E* had been given shares of incomes for and during their natural lives. The case of the death of Martha Lyle Tinker leaving children is omitted, as her income is given in that event under clause *A*, containing a special provision in favor of her children.  

Then follows the disputed clause *G*, which provides for the case of the death without leaving children or other descendants surviving of "any person who under this will is entitled to receive any income during his or her entire life," in which case the "surviving life-tenants or life-tenant" shall be paid the income which such deceased life-tenant was receiving at the time of his or her death, "said payment of said income to said surviving life-tenants or life-tenant to be for their respective lives, and to be made to them in the proportions hereinbefore stated in clauses *A, C, D* and *E*." Here the testator is careful to include clause *A*, because the contingency of Martha Lyle Tinker's death without children or other descendants is not provided for in clause *A*, and, as it seems to us, he omits clause *B* for two reason: First, because his nephew, Franklin, and his niece, Martha Tinker, who are children of Martha Lyle Tinker, have special provisions made for them quite distinct from those made for the other beneficiaries in clauses *C, D* and *E*; and for the further reason that the testator intended by life-tenants those persons who under the prior clauses were entitled to receive income "for and during their natural lives." Indeed, the reference, in the first part of this clause, to the death of any person entitled to receive income "during his or her entire life" is somewhat significant. It seems to us that this first part of clause *G* would not apply to the death of Franklin and Martha, the beneficiaries in clause *B*, as they are

4 D. & C.

not given the income during their "entire lives," and that they were not in the contemplation of the testator in the latter part of the same clause G, providing for the payment of income to the surviving life-tenants for their respective lives.

It may be conceded that Franklin and Martha might, in some circumstances, be considered as tenants for life, although their tenancy would terminate when they arrived at certain specified ages, just as a widow, given an estate during widowhood, may be regarded as life-tenant because her estate may possibly endure so long, or, as in Disley v. Disley, 30 R. I. 366, cited by the learned counsel for the minors, an agreement that one should continue to live in a house until further agreement between the parties, constituted life tenancy as distinguished from a mere tenancy at will. But the question here is what did this testator mean when he used these words, and, in our opinion, he referred to all the other beneficiaries, except Franklin and Martha, under clause B, and for that reason intentionally omitted in clause G any reference to clause B.

This construction is confirmed by a consideration of clause H, which provides that upon the death of *all said life-tenants* the principal of the estate *not otherwise disposed of* shall be divided among the persons and for the estates they would have been entitled to if the testator had survived the survivor of said life-tenants and died intestate, etc., with a provision that until the time of final distribution, all income not otherwise disposed of by the will shall be divided among the persons, etc., mentioned in clause G, concerning the income referred to in said clause.

We, therefore, conclude that the exceptions should be and they are now sustained and distribution directed of the income released by the death of Jennie L. Webster to the surviving life-tenants, exclusive of Franklin and Martha, the same to be paid to them in the proportions stated in clauses A, C, D and E.

Counsel will prepare a schedule of distribution in accordance with this opinion and submit the same to the auditing judge.